# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| Lu Ning, : | |
|     *Plaintiff*, : | |
| v. : | Civil Action No.: 3:23-cv-00395 |
| Michael Zyda & 411 Productions : | |
| DTLA, LLC, : | |
|     *Defendants*. : | November 7, 2023 |

## **AMENDED COMPLAINT**

1. Plaintiff Lu Ning brings this action for damages to redress, *inter alia*, the discrimination and sexual harassment of Defendants Michael Zyda and 411 Productions DTLA, LLC.

   **A.    Parties**

2. Lu Ning resides in Connecticut and is the Plaintiff in this matter.

3. Defendant Michael Zyda resides in and is a citizen of California and was Lu Ning's employer.

4. Defendant 411 Productions DTLA, LLC is a limited liability company formed under the laws of California with its principal place of business in California and was also Lu Ning's employer.

   **B.    Jurisdiction**

5. Because this action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2003-2 and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 & 1343, and supplemental jurisdiction exists over the state law claims pursuant to § 1367.

6. Venue is proper in this Court by virtue of 28 U.S.C. § 1391 because many of the events giving rise to the claims occurred in the District of Connecticut.

C. **Factual Allegations**

7. Defendants, upon information and belief, had 20 or more individuals as employees, though they routinely misclassify employees, including the Plaintiff, as independent contractors.

8. Beginning in April 2016, Plaintiff worked by contract as an advisor for 411 Productions DTLA LLC.

9. Plaintiff worked for Defendants beginning in April 2016 in Los Angeles, California, but began working for the Defendants remotely out of New Haven, Connecticut beginning on or around May 1, 2020.

10. During her employment, Defendant Michael Zyda deceived, abused, coerced, threatened, exploited, sexually harassed, and manipulated Plaintiff, taking advantage of her immigration status and discriminating against her on the basis of her sex and mental disabilities.

11. Defendant Michael Zyda effectively kidnapped the Plaintiff, and trapped her to live with him. During that time, he would send her communications along the lines of "We should buy a house together."

12. In Fall 2018, Defendant Michael Zyda trapped Plaintiff to live on his air mattress on the floor and couch in his dangerous home office for over a year, causing the Plaintiff to suffer a serious personal injury, causing her spine to be deformed, and causing extreme pain. During that time, Plaintiff suffered from repeated sexual harassment from Defendant Michael Zyda, and was exposed to threats at knifepoint from a neighbor of Defendant Zyda.

13. Throughout Plaintiff's employment, she was subjected to inappropriate sexual advances and comments of a sexual nature. Defendant Michael Zyda's sexual harassment was verbal and physical in nature and occurred on

14. Defendant Michael Zyda would often comment on Plaintiff's physical appearance, tell her that he "loved" her, asked her to move in with him, and insinuated that he wanted to have sex and children with her, among other advances and comments.

15. Defendant Michael Zyda would make comments about Plaintiff's weight, asking if Plaintiff gained weight and how Plaintiff expected to get a man if she gained weight.

16. Defendant Michael Zyda would often walk around shirtless around the Plaintiff, while she was working or trying to work out of the home office.

17. Defendant Michael Zyda would post photos and videos about the Plaintiff without Plaintiff's consent.

18. Defendant Michael Zyda would harass Plaintiff on the basis of her mental disabilities, which were caused by childhood trauma.

19. Defendant Michael Zyda would purposely trigger the Plaintiff's mental health and cause her trauma, which he ignored when Plaintiff would raise her concerns. He was aware of Plaintiff's depression, and suicidal thoughts and ideations, which were caused by his conduct, but maliciously persisted in his harassment based upon this knowledge.

20. Plaintiff did tasks outside of her consulting job responsibility, including temporary CEO, BP, marketing research, producing, acting, designing, financing, hiring, PR, cooking, and cleaning.

21. Defendant Michael Zyda forced and threatened Plaintiff to do these tasks, using her immigration status to coerce her, and exploiting her on the basis of her mental disabilities, gender, by for example withholding of salary, sexual harassment, and threatening deportation to China.

22. Defendants violated their contract with Plaintiff, resulting in lost pay.

23. The first contract Defendants agreed upon provided for pay at a rate of $5,000 per week.

24. During the time period of February 2020 through April 2020, Plaintiff refused to massage Defendant Michael Zyda. In response, Defendant Michael Zyda threatened to return Plaintiff to China, evict her onto the street where she would be homeless, would play violent videos, inflict anxiety and panic attacks, causing attempted suicide, and causing Plaintiff to call 911.

25. Effective on or about January 1, 2020, Defendants reached a second contract, providing for a $2,000 a month housing accommodation. At the time the contract was formed, the Plaintiff's mental capacity was severely compromised, she did not understand the terms, and she signed under duress.

26. Plaintiff escaped from Defendant Michael Zyda and moved to New Haven, Connecticut, where she continued to work remotely for Defendants:

27. Defendants routinely delayed paying Plaintiff her $2,000 monthly housing accommodation, fees, office supplies, groceries, visa application fees, medical expenses, and did not pay her the salary they had agreed.

28. Throughout 2016 through 2022, Defendants breached their contract with Plaintiff, failing to pay her the promised salary of $5,000 weekly. Defendants only paid her little cash and allowed Plaintiff to use Defendant Michael Zyda's credit card.

29. At one point, Defendants stopped paying Plaintiff altogether.

30. Defendants stopped paying Plaintiff in retaliation for her denying Defendant Michael Zyda's sexual advances.

31. Any time Plaintiff raised concerns with Defendants about any of the adverse actions she suffered, Defendant Michael Zyda would threaten Plaintiff with termination and return to China.

32. Plaintiff is a person with qualifying disabilities under statute.

33. In July 2021, a lump was detected in the Plaintiff's breast, and the Plaintiff informed Defendants, to receive reimbursement for medical expenses and preparation for surgery. Defendant Michael Zyda texted, in an act of sexual harassment, "we will have to start calling you 'Lumpy.'"

34. In 2021 through 2022, Defendants deliberately gave Plaintiff difficult tasks, outside of her knowledge and capacity, that she could not complete, due to her disabilities and physical illness.

35. On April 2, 2022, Defendants retaliated against Plaintiff, purposely denying reasonable accommodation in the form of allowing her to renew her home office lease, refusing to provide documents requested by the Plaintiff's landlord, breaching the contract with the Plaintiff, discriminating against Plaintiff in terms and conditions on the basis of sex, disabilities, national origin, race, and refusal of sexual advances. Defendant again threatened to fire Plaintiff and return her to China.

36. Defendants subjected Plaintiff to a hostile work environment.

37. On April 21, 2022, Defendants terminated the Plaintiff's employment, while owing her over $2,000,000 in backpay, along with medical expenses and other expenses the Defendants had agreed to reimburse. Plaintiff's medical bills were sent into collection, pushing Plaintiff into a desperate situation, and causing suicidal thoughts, delayed treatment and

surgery, and exacerbating the Plaintiff's PTSD, anxiety, severe depression, and attempted suicide.

38. Defendants sexually harassed Plaintiff based on her sex.

39. Defendants retaliated against Plaintiff for denying Defendant Michael Zyda's sexual advances.

40. Defendants took advantage of the Plaintiff's citizenship, national origin, race, and ancestry by violating Plaintiff's contract, resulting in unequal duties and back pay, still owed.

41. Defendants terminated Plaintiff based on her sex, race, national origin, and disabilities.

42. The defendants aided and abetted each other in the foregoing.

43. Plaintiff has exhausted her administrative remedies and has received a Right to Sue letter from the EEOC dated January 13, 2023 and a release of jurisdiction letter from the CHRO dated March 15, 2023.

44. On October 31, 2023, Plaintiff received a Right to Sue notice from the State of Calirofnia Civil Rights Department, Case Number 202204-16719615.

**D. Causes of Action**

**First Claim:** **Discrimination in violation of CFEPA**
**Conn. Gen. Stat. § 46a-60b**

1-43. The allegations above are incorporated as if included fully here.

44. The conduct of defendants above violated Connecticut statute, entitling plaintiff to compensatory damages and punitive damages and all other remedies available under law.

**Second Claim:** **Discrimination in violation of Title VII – sex, gender, race, national origin, sexual harassment**

1-43. The allegations above are incorporated as if included fully here.

44. The conduct of defendants above violated Title VII and the plaintiff suffered from discrimination in the terms and conditions of her employment and was terminated because of discrimination in violation of Title VII. The plaintiff is therefore entitled to compensatory damages and punitive damages and all other remedies available under law.

**Third Claim:** **Discrimination and Failure to Accommodate in violation of ADA**

1-43. The allegations above are incorporated as if included fully here.

44. The conduct of defendants above violated the ADA in that they discriminated against the plaintiff on the basis of her disability and failed to accommodate her disability in violation of the law.

45. The plaintiff is therefore entitled to compensatory damages and punitive damages and all other remedies available under law.

**Fourth Claim:** **Discrimination in violation of CFEHA, California Government Code Section 12900-12951 & 12927-12928 & 12955 - 12956.1 & 12960-12976**

1-42, 44. The allegations in paragraphs 1-42 and 44 above are incorporated as if included fully here.

45. The conduct of the defendants above violated the California Fair Employment and Housing Act in that they discriminated against the plaintiff on the basis of her disability, sex, gender, race, national origin, and sexually harassed her.

46. The plaintiff is therefore entitled to compensatory damages and punitive damages and all other remedies available under law.

**E. Prayer for Relief**

WHEREFORE, the plaintiff respectfully requests the following relief:

A. Compensatory damages from each defendant;

B. Punitive damages from each defendant;

C. Attorney's fees pursuant to law;

D. Costs;

E. A jury trial; and

F. Such other and further relief as the Court may deem proper.

Respectfully Submitted,

THE PLAINTIFF

By_____/s/_____
Alexander T. Taubes ct30100
470 James Street, Suite 007
New Haven, CT 06513
(203) 909-0048
alextt@gmail.com